| 4 | 419 |
| 29 | 146 |
| 29 | 590 |

## JUAN A. FERNANDEZ *v.* THE STATE.

1. CONTINUANCE. — Diligence is not shown when it appears that, notwithstanding process sued out six months before the trial had never been returned, no further effort was made to secure the witness.

2. SAME. — Testimony which, if procured, would not be inconsistent with the guilt of the accused, is of too immaterial a nature to entitle him to a continuance to obtain it.

3. MURDER — EVIDENCE. — Two traveling companions were murdered in the same onset, though their bodies were found more than a mile apart. On his trial for the murder of one of them, the accused objected to the State's witnesses being allowed to describe the condition in which the body of the other was found. *Held,* not error to allow the testimony, as part of one connected transaction.

APPEAL from the District Court of Refugio. Tried below before the Hon. H. C. PLEASANTS.

The appellant was tried for the murder of John Welder, alleged to have been committed on May 14, 1877. On that date the deceased, in company with John Maton, traveling on horseback, passed through the town of Refugio, on their way to the town of St. Mary's. About eleven miles from Refugio they were assassinated. Welder had been shot twice in the head, and Maton's body exhibited five or six different wounds. The latter was found some twenty steps from the road they had been traveling, whereas Welder was found about a mile and a-half distant, and about 400 yards from the road. His pistol was in its scabbard, and a few dollars in his pocket. He was lying face downwards, with his arms folded under his head. One bullet had passed in at the left eye, and another near the right temple. The tracks of four horses, apparently at full speed, were followed from the road to where Welder's body lay. Two of these tracks seemed to run close together, and the others were on each side of them. On a direct line between the bodies of

the two murdered men was found a hat, with square holes cut in it, and around it a white handkerchief, with small red figures on it.    This hat was distinctly recognized as the hat of Fernandez, the appellant, who, on the day of the murder, was in the town of Refugio, and talked with Welder as the latter passed through.    The appellant and an unknown companion were seen at several different points in the rear and but short distances behind the murdered men, on the road leading from Refugio to St. Mary's, which led in a very different direction than the Castillo Ranch—where appellant lived, and from where, as he represented in Refugio, he had been sent for medicine.    The day after the bodies were discovered, the sheriff of the county and others went to the Castillo Ranch, in search of the appellant.    They found there the horse he had ridden on the second day previous, which was the day of the murder, and his condition showed that he had just been severely used.    The appellant was not to be found, but was arrested two or three days afterwards at the La Para Ranch, in the county of Cameron, and about a hundred miles distant from the town of Refugio.

The evidence against the appellant was entirely circumstantial, consisting of the testimony of many witnesses to the movements of the appellant and his unknown companion, and resulting in his conviction, as one of the assassins, of murder in the first degree.    No single circumstance tended to a different conclusion.    Difficulties had existed between the proprietors of the Castillo Ranch and Welder, the deceased, respecting the boundary-lines of their adjoining lands, and but a few days prior to the murder an effort to fix the lines by a survey was made, but proved ineffectual. It elicited, however, from one of the Castillos the remark that he intended to have the lines his own way, and immediately after the murder he and some of his brothers disap-

peared. Doubtless, the theory of the prosecution was that they were the instigators, and the appellant and his companion their hired instruments.

The opinion shows the questions raised in this court.

*Lane & Payne*, for the appellant, filed an ingenious and forcible argument.

*H. H. Boone*, Attorney-General, for the State.

WHITE, J. The appellant, Juan Antonio Fernandez, was charged by the indictment in this case with the murder of one John Welder, in Refugio County, on May 14, 1877. At the trial below, he was found guilty of murder of the first degree, and his punishment affixed by the judgment of the court at death by hanging.

A reversal of the case is sought upon the following grounds, viz. :

"1. Because defendant's application for a continuance was overruled by the court.

"2. Because of the admission of certain evidence, over objections made by defendant.

"3. Because the evidence does not support the verdict."

No authorities are cited, in the ingenious brief of counsel for appellant, in support of either of these propositions.

1. With regard to the motion for a continuance, the diligence used to procure the attendance of the witness certainly was not sufficient. The application was made and overruled by the court on April 4, 1878. The diligence stated in the application was that defendant "had caused an attachment to issue, directed to the sheriff of Cameron County, for said witness, and that said attachment was issued about October 7, 1877, for the attendance of said witness at this term of the court, and that said attachment was, on said date, duly mailed by the clerk of this court, directed to the sheriff of Cameron County, at Brownsville.

That said attachment has not been returned." Six months, lacking but one or two days, had elapsed since this attachment had been issued and sent, and yet no other steps were taken to secure the witness' attendance, though the attachment had not been returned or heard from.

But suppose, for the sake of the argument, that it be admitted that defendant had the right to wait till the very last day when the writ would have been returnable, without making any other effort to procure the attendance of the witness; yet, in this case, we do not think the court erred in overruling the application, upon the ground that the testimony sought was immaterial.

The third requisite to the application for a continuance is that it must state " the facts which are expected to be proved by the witness, and it must appear to the court that they are material." Pasc. Dig., art. 2987.

The facts proposed to be established by the witness were, substantially, that he, defendant, was arrested at the La Para Ranch, in Cameron County, where he was on a visit to his sister; that he had been there two or three days, without any concealment; that defendant was well known there, and that it was a public place, to wit, a telegraph station; and that while there he had moved about publicly and openly. These facts might all be true, and yet in no manner be inconsistent with the fact that he committed the murder, and fled immediately to a distant county, in which the La Para Ranch was situated. *Burton* v. *The State*, 21 Texas, 337; *Richardson* v. *The State*, 2 Texas Ct. App. 322; *Wright* v. *The State*, 44 Texas, 645; *Cantu* v. *The State*, 1 Texas Ct. App. 402.

2. The court, over objections of defendant, permitted evidence in regard to the circumstances connected with the finding of the dead body of John Maton, on the day the body of the deceased John Welder was found, and allowed the witness to describe the wounds found upon the body of

Maton. In the light of all the circumstances detailed in the evidence on the trial, this testimony was admissible. A double murder had been committed, and there is not the slightest shadow of a doubt but that the assassins who killed the two unfortunate men were acting together in the commission of the two deeds. The killing of Maton was a part of the same transaction, and was immediately connected with the killing of Welder. There was no error in the admission of the testimony.

3. As to the sufficiency of the evidence, whilst it is entirely circumstantial, it is so certain, in the close continuity and conclusiveness of all the facts, that it forces a conviction of defendant's guilt which cannot be reconciled with any other reasonable hypothesis. Step by step, without a single link in the chain being wanting, the defendant is traced along the track of the dead man, to within a short distance of where the homicide was committed. And though no witness actually saw the fatal shot fired, the fact that the hat of the defendant was picked up right between the spots upon which the two dead bodies were lying, fixes his presence at the time and place of the murder beyond the possibility of a doubt. It is useless to inquire into, or speculate about, the motives which induced the commission of this most horrible double assassination. The deed has been perpetrated, and the perpetrator or perpetrators, whoever they be, justly merit the extremest penalty of the law. In our opinion, the defendant's guilty connection with the crime is fully established; and believing, from the record before us, that he has had a fair and impartial trial, in which every form of law was respected, and every right of his accorded him, we see no reason why he should not suffer the death which justice and the law have affixed as his proper punishment.

The judgment of the lower court is affirmed.

*Affirmed.*